UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PENNZOIL-QUAKER STATE COMPANY § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CASE NO. 10cv4045 | |
| § | | |
| § | JURY TRIAL DEMANDED | |
| MILLER OIL AND GAS OPERATIONS DBA § | | |
| PITT STOP USA, AND WILLIAM J. MILLER § | | |
| § | | |
| Defendants. § | | |

**ORIGINAL COMPLAINT**

For its complaint, Pennzoil-Quaker State Company (collectively "PQS"), appearing through the undersigned counsel, alleges as follows based on knowledge or information and belief:

**JURISDICTION AND VENUE**

1. This is an action for trademark infringement, counterfeiting, unfair competition, dilution, false advertising, deceptive trade practices, unjust enrichment and civil conspiracy under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* ("Lanham Act"), and the laws of the State of Texas. Accordingly, this Court has subject matter jurisdiction over this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and Title 28 of the United States Code, §§ 1331 and 1338, and supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a).

2. A substantial part of the acts and omissions giving rise to this suit took place within the Southern District of Texas.

## PARTIES

3.  Plaintiff Pennzoil-Quaker State Company d/b/a SOPUS Products is a Delaware corporation having its principal place of business at 700 Milam Street, Houston, Texas 77002.

4.  Defendant Miller Oil and Gas Operations dba as Pit Stop USA ("Pit Stop Oil Change Facility") is a general partnership under the laws of the State of Texas and operates an oil change business at 10380 Jones Rd., Houston, Texas 77065 . Miller Oil and Gas Operations was formerly Miller Oil and Gas Operations, Inc. through a conversion from a Texas corporation to a general partnership in July 2009. Its registered agent is William J. Miller. He may be served with process at his residence or the business address.

5.  Defendant William J. Miller ("Miller"), sued in his individual capacity as a joint tortfeasor and as a partner or owner of Defendant Miller Oil and Gas Operations, is an individual residing at 1661 Tanglewood Blvd., Houston, Texas 77056, and may be served with process at his residence or the business address.

6.  All the wrongful conduct of the corporate defendant was done at the direction and with the active personal involvement of the individual defendants.

7.  Defendants are collectively herein called "Counterfeiters".

## FACTS

**A. Pennzoil-Quaker State Company and Its Marks**

8.  Pennzoil-Quaker State Company, along with its predecessors and affiliates, SOPUS, (collectively "PQS"), has been a leading source of automotive lubricants and related products and services for almost a century.

9.  Since at least as early as 1915, PQS and its authorized dealers and distributors have used the mark PENNZOIL and the PENNZOIL logo in connection with the sale and

promotion of lubricants and other petroleum-related products. The PENNZOIL logo incorporates "PENNZOIL" in black letters over a red "Liberty Bell" design on a yellow background, sometimes presented within an oval design. Over the years, the yellow, red and black color scheme has been repeated in PQS's trade dress, advertising and promotion for its PENNZOIL products and services. A representative PENNZOIL logo is presented below.



10. The PENNZOIL word mark, the PENNZOIL logo and other trademarks identified in paragraph 13 are collectively referred to herein as the "PENNZOIL Marks."

11. Over the years, PQS has invested great effort and resources in advertising and promoting the PENNZOIL Marks throughout the United States, including the state of Texas.

12. As a result of PQS's extensive use and promotion of the PENNZOIL Marks, these marks have become distinctive, well-known and widely recognized by consumers in Texas and throughout the country, serving to identify and indicate the source and quality of PQS's products and services to the consuming public, and to distinguish PQS's products and services from those of other manufacturers and retailers. PQS has developed valuable goodwill and common-law rights in the PENNZOIL Marks, and these marks are now famous throughout the United States.

13. In addition to its extensive common-law rights, PQS owns federal trademark registrations for its marks, including those shown in the chart below:

| MARK | REGISTRATION NO./ REGISTRATION DATE | GOODS/SERVICES |
|---|---|---|
| PENNZOIL 10 MINUTE OIL CHANGE | 1,562,593/ October 24, 1989 | Automotive lube center services (IC 37) |
| 10 MINUTE | 1,465,843/ November 17, 1987 | Automotive lube center services (IC 37) |
| PENNZOIL (logo) | 2,175,045/ July 21, 1998 | Chemical fuel and motor oil additives for internal combustion engines; chemical additives for engine and fuel treatment; and chemical preparations for use in the manufacture of motor oil and fuel additives (IC 1) Carburetor cleaners; automatic choke cleaner; injector nozzle cleaner; degreasers and engine cleaners for vehicles (IC 3) Motor oil; automotive, industrial and general purpose greases and lubricants; automatic transmission fluids (IC 4) Clothing, namely, T-shirts, sweatshirts, hats, jackets, sweaters, |

| MARK | REGISTRATION NO./ REGISTRATION DATE | GOODS/SERVICES |
|---|---|---|
| | | tank shirts, sport shirts, neckties and children's clothing, namely, sleepwear, T-shirts, jackets and sweatshirts (IC 25) Automobile service station services (IC 37) |
| PENNZOIL | 2,175,082/ July 21, 1998 | Chemical fuel and motor oil additives for internal combustion engines; chemical additives for engine and fuel treatment; and chemical preparations for use in the manufacture of motor oil and fuel additives (IC 1) Carburetor cleaners; automatic choke cleaner; injector nozzle cleaner; degreasers and engine cleaners for vehicles (IC 3) Motor oil; automotive, industrial and general purpose greases and lubricants; automatic transmission fluids (IC 4) Clothing, namely, T-shirts, sweatshirts, hats, jackets, sweaters, tank shirts, sport shirts, neckties and children's clothing, namely, sleepwear, T-shirts, jackets and sweatshirts (IC 25) Automobile service station services (IC |

| MARK | REGISTRATION NO./ REGISTRATION DATE | GOODS/SERVICES |
|---|---|---|
|  |  | 37) |

14. All of the above registrations are valid, enforceable and subsisting, and all are incontestable pursuant to 15 U.S.C. § 1065. Copies of the certificates of registration for the above registrations are attached as Exhibit A.

15. PENNZOIL-branded products are available for purchase and installation through authorized oil-change centers throughout the United States. There are thousands of authorized PENNZOIL oil-change centers across the U.S., including a large number in Texas.

16. PQS's authorized regional distributors provide high quality, genuine PENNZOIL motor oil in bulk and packaged form to PQS's authorized PENNZOIL oil-change centers. In turn, the authorized oil-change centers use these products in performing oil-change services for consumers. PQS's control of its authorized distributors and oil-change centers ensures that genuine, unadulterated PENNZOIL products are delivered to consumers and that such products meet PQS's quality standards.

17. PQS's authorized PENNZOIL oil-change centers display signage bearing the PENNZOIL Marks, under license from PQS, for the purpose of communicating to consumers that they will receive genuine PENNZOIL products in their oil-changes.

## B. Counterfeiters' Unauthorized Activities

18. Counterfeiters own, operate and/or act as conspirators with the other Defendants in the wrongful actions alleged herein at the Pit Stop Oil Change Facility at 10380 Jones Rd., Houston, Texas 77065. Photographs of this facility are attached as Exhibit B.

19. On information and belief, since at least 2006, Counterfeiters' facility identified above have displayed and published prominent exterior signage bearing the PENNZOIL Marks. *See* Exhibit B.

20. In addition, Counterfeiters' oil change facility prominently uses the yellow, red and black color scheme in Counterfeiters' exterior signage and building facades (the "PENNZOIL Trade Dress").

21. PQS is unable to find any agreements authorizing Counterfeiters' current use of the PENNZOIL Marks and PENNZOIL Trade Dress.  Accordingly, PQS alleges that Counterfeiters' current use of the PENNZOIL Marks and PENNZOIL Trade Dress is not authorized by PQS, and such marks constitute spurious counterfeit marks that are identical to PQS's federally registered PENNZOIL Marks.

22. Further, since PQS is unable to find any agreements authorizing Counterfeiters' use of the PENNZOIL Marks and PENNZOIL Trade Dress, PQS alleges that Counterfeiters are not authorized installers for PENNZOIL products or authorized PENNZOIL service providers and are not authorized to use the PENNZOIL Marks and PENNZOIL Trade Dress in connection with their business.

23. On information and belief, Counterfeiter's have not purchased any genuine Pennzoil or Quaker-State motor oil in bulk from an authorized distributor since at least March 2009 and therefore has engaged in the unauthorized and illegal acts alleged in this Complaint from at least that time continuously until now.

24. PQS has obtained and analyzed oil affirmatively identified by Counterfeiters as "PENNZOIL" in their oil-change services, and such analysis confirms that Counterfeiters are substituting counterfeit products for genuine PENNZOIL products.  Counterfeiters orally

identified the oil as PENNZOIL. Moreover, the dispensing unit that dispensed the motor oil was marked PENNZOIL. Counterfeiters further this deception by indicating on their receipt that the oil used for the oil change was Pennzoil. *See* Exhibit C.

25. On information and belief, Counterfeiters have advertised, displayed and published their products and services without authorization under the QUAKER STATE Marks and the QUAKER STATE Trade Dress on a continuous and daily basis from at least as early as March 2009 to the present time; and during that time period have been and are substituting counterfeit products for genuine QUAKER STATE products

26. Counterfeiters are misrepresenting themselves as an authorized PQS oil-change center and are misrepresenting their products and services as PENNZOIL products and services.

27. Counterfeiters have engaged in a deliberate course of conduct to deceive consumers into believing that the motor oil and lubrication services offered by Counterfeiters emanate from, or are authorized, connected or affiliated with, PQS, and Counterfeiters continue to falsely represent that they feature genuine PENNZOIL products in order to trade on PQS's enormous reputation and goodwill, and to injure PQS and PQS's authorized oil-change centers. Counterfeiters' unauthorized use of the PENNZOIL Marks and PENNZOIL Trade Dress began long after the PENNZOIL Marks and PENNZOIL Trade Dress became famous.

28. On July 20, 2010, PQS mailed to Counterfeiters a cease and desist letter demanding that the facility be fully de-branding by removing all PENNZOIL Marks and PENNZOIL Trade Dress. No response was received. A copy of the cease and desist letter is attached as Exhibit D.

## C. Injury to PQS and the Consuming Public

29. Counterfeiters' unauthorized use of the PENNZOIL Marks and PENNZOIL Trade Dress in this manner is likely to cause confusion, to cause mistake, and to deceive customers and potential customers as to the affiliation, connection, sponsorship or association of Counterfeiters with PQS, or as to the origin, affiliation, sponsorship, or approval of Counterfeiters' products or services by PQS.

30. Counterfeiters' unauthorized use of the PENNZOIL Marks and PENNZOIL Trade Dress falsely indicates to the purchasing public that Counterfeiters, their business, and their products or services are affiliated, connected, or associated with PQS, or are sponsored, endorsed, or approved by PQS, or are in some manner related to PQS or its products or services when that is not true.

31. Counterfeiters' unauthorized use of the PENNZOIL Marks and PENNZOIL Trade Dress falsely designates the origin of Counterfeiters' products and services, and falsely or misleadingly describes and misrepresents facts with respect to Counterfeiters and their products and services.

32. Counterfeiters' unauthorized and wrongful use of the PENNZOIL Marks and PENNZOIL Trade Dress is likely to cause dilution of the distinctive quality of the PENNZOIL Marks, and is causing such dilution.

33. Counterfeiters' unauthorized use of the PENNZOIL Marks and PENNZOIL Trade Dress enables Counterfeiters to trade on and receive the benefit and goodwill built up at great labor and expense over many years by PQS in the reputation of the PENNZOIL Marks and PENNZOIL Trade Dress, and to gain acceptance for Counterfeiters' services not solely on Counterfeiters' merits.

34. Counterfeiters' unauthorized use of the PENNZOIL Marks and PENNZOIL Trade Dress enables Counterfeiters to pass off products and services on unsuspecting consumers as those of PQS when they are not authentic PQS products or services.

35. Counterfeiters' unauthorized use of the PENNZOIL Marks and PENNZOIL Trade Dress deceives consumers into believing that the motor oil products used by Counterfeiters are genuine PQS products when that is not the case.

36. Counterfeiters' unauthorized and wrongful use of the PENNZOIL Marks and PENNZOIL Trade Dress deceives consumers into believing that the oil-change services provided by Counterfeiters are genuine PQS-authorized, oil-change services when that is not the case.

37. Counterfeiters' unauthorized use of the PENNZOIL Marks and PENNZOIL Trade Dress removes from PQS the ability to control the nature and quality of products and services provided under the PENNZOIL Marks and PENNZOIL Trade Dress, and places the valuable reputation and goodwill of PQS in the unfettered control of Counterfeiters.

38. As a result of Counterfeiters' unauthorized and wrongful use of the PENNZOIL Marks and PENNZOIL Trade Dress, Counterfeiters have been and are being unjustly enriched at PQS's expense.

39. Unless these unfair and deceptive trade practices and acts of unfair competition by Counterfeiters are enjoined by this Court, these practices and acts will continue, and will continue to cause irreparable injury to PQS and to the public, for which there is no adequate remedy at law.

**D.   Willful Nature of Counterfeiters' Activities**

40. Counterfeiters' activities complained of herein have been malicious, fraudulent, deliberate, willful, intentional, and in bad faith, with full knowledge and conscious disregard of

PQS's rights.  In view of the egregious nature of Counterfeiters' actions, this is an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

### COUNT I:  FEDERAL TRADEMARK COUNTERFEITING

41. PQS repeats the above allegations as if fully set forth herein.

42. The acts of Counterfeiters complained of herein constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

### COUNT II:  FEDERAL TRADEMARK INFRINGEMENT

43. PQS repeats the above allegations as if fully set forth herein.

44. The acts of Counterfeiters complained of herein constitute infringement of PQS's registered trademarks in violation of Section 32(d) of the Lanham Act, 15 U.S.C. § 1116(d).

### COUNT III:  FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

45. PQS repeats the above allegations as if fully set forth herein.

46. The acts of Counterfeiters complained of herein constitute unfair competition and false designation of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

### COUNT IV:  FEDERAL TRADEMARK DILUTION

47. PQS repeats the above allegations as if fully set forth herein.

48. The acts of Counterfeiters complained of herein constitute dilution of PQS's famous marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

49. Counterfeiters willfully intended to trade on PQS's reputation and to cause such dilution.

### COUNT V:  FEDERAL FALSE ADVERTISING

50. PQS repeats the above allegations as if fully set forth herein.

51. The acts of Counterfeiters complained of herein constitute false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

## COUNT VI:  TEXAS TRADEMARK INFRINGEMENT

52. PQS repeats the above allegations as if fully set forth herein.

53. The acts of Counterfeiters complained of herein constitute trademark infringement in violation of Tex. Bus. & Com. Code §16.26.

## COUNT VII:  TEXAS COMMON LAW UNFAIR COMPETITION

54. PQS repeats the above allegations as if fully set forth herein.

55. The acts of Counterfeiters complained of herein constitute unfair competition under the common law of Texas.

## COUNT VIII: TEXAS TRADEMARK DILUTION

56. PQS repeats the above allegations as if fully set forth herein.

57. The acts of Counterfeiters complained of herein constitute trademark dilution in violation of Tex. Bus. & Com. Code §16.29.

## COUNT IX:  UNJUST ENRICHMENT

58. PQS repeats the above allegations as if fully set forth herein.

59. The acts of Counterfeiters complained of herein constitute unjust enrichment of Counterfeiters at PQS's expense.

## COUNT X – EXEMPLARY DAMAGES

60. PQS repeats the above allegations as if fully set forth herein.

61. Because Counterfeiters' actions were malicious and willful and in conscious disregard for PQS's rights, PQS is entitled to exemplary damages.  Counterfeiters had a specific intent to cause substantial injury to PQS by acts of common law infringement, unfair competition

and dilution as alleged above.  Counterfeiters had a purpose to injure PQS so as to gain an unfair competitive advantage and unfairly take market share from Plaintiff.  In addition or in the alternative, the specific acts or omissions of Counterfeiters, when viewed objectively from Counterfeiters' viewpoint, involved an extreme degree of risk.  Counterfeiters had actual awareness of the risk, but proceeded with conscious indifference of the rights of Plaintiff.  Counterfeiters have committed acts or omissions that amount to fraud, actual malice and/or gross negligence as those terms are defined in Section 41.003 of the Texas Civil Practice and Remedies Code.  Accordingly, pursuant to Section 41.003 of the Texas Civil Practice and Remedies Code, PQS is entitled to recover exemplary damages from Counterfeiters.

### COUNT XI:  INJURIES, DAMAGES, COUNTERFEITERS' PROFITS: IRREPARABLE HARM

62.     PQS repeats the above allegations as if fully set forth herein.

63.     As a direct and proximate result of Counterfeiters' conduct as above described, PQS has lost revenues and profits and injury to its business and product reputation, and will continue to lose revenues and injury to its business and product reputation.

64.     For the harm and loss suffered by PQS, and for the harm and loss that will continue but for the intervention by this court, PQS has no adequate remedy at law.  If the Counterfeiters are permitted to continue using the PENNZOIL Marks and PENNZOIL Trade Dress, they will have profited by their own wrong, resulting in damages to PQS that are unpredictable and unending.

65.     Further, PQS is entitled to an award of Counterfeiters' profits made from the sale of substitute oil to consumers who thought they were receiving PENNZOIL.  PQS requests this

court to award to PQS three-fold the COUNTERFEITERS' profits as compensation and not a penalty.

## COUNT XII: CIVIL CONSPIRACY

66. PQS repeats the above allegations as if fully set forth herein.

67. Counterfeiters are believed to have engaged in a conspiracy to engage in the unlawful conduct alleged above and had a specific intent on the object and course of action to substitute cheap oil for the genuine PENNZOIL oil expected by the customer.

68. As a direct and proximate result of the Counterfeiters' conspiracy, PQS has lost revenues and profits and injury to its business and product reputation, and will continue to lose revenues and injury to its business and product reputation.

## PRAYER FOR RELIEF

WHEREFORE, PQS prays and respectfully requests that:

a) Counterfeiters and their officers and directors, agents, servants, employees, attorneys, successors, heirs, and assigns, related companies, and all those acting in concert with, or on behalf of, Counterfeiters, be preliminarily and permanently enjoined and restrained from using the PENNZOIL Marks, any counterfeit reproduction of the PENNZOIL Marks, any copy or colorable imitation of the PENNZOIL Marks, or any other mark confusingly similar thereto or likely to dilute the distinctive quality of the PENNZOIL Marks or otherwise simulate PQS's trade identity or PENNZOIL Trade Dress, including but not limited to, the use of a yellow-and-red or yellow-and-black color scheme in their signage or building facades, pursuant to 15 U.S.C. § 116(a);

b) Counterfeiters be ordered to deliver to PQS any and all signage, invoices, window stickers, business cards and other advertising or promotional materials in the possession of

Counterfeiters or under their control bearing any of the PENNZOIL Marks or PENNZOIL Trade Dress pursuant to 15 U.S.C. 1116(d).

c)   Counterfeiters be ordered to file with this Court and to serve upon PQS, within 30 days after the entry and service on Counterfeiters of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Counterfeiters have complied with the injunction pursuant to 15 U.S.C. § 1118;

d)   PQS recover all damages it has sustained as a result of Counterfeiters' activities and that said damages be trebled pursuant to 1117(a) and 1117(b);

e)   An accounting be directed to determine Counterfeiters' profits resulting from Counterfeiters' illegal activities and ill-gotten gains, and that such profits and gains be paid over to PQS and increased to threefold as the Court finds to be just under the circumstances of this case pursuant to 1117(a) and 1117(b);

f)   PQS recover statutory damages pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(c) which provides for awards up to $2,000,000 per violation;

g)   PQS be awarded exemplary damages as allowed by Tex. Civ. Prac. & Rem. Code 41.001 *et seq* under the state law causes of action since the harm caused by Counterfeiters' actions results from Counterfeiters' fraud, malice and/or gross negligence;

h)   PQS recover its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a);

i)   PQS recover its costs of this action and prejudgment and post-judgment interest;

j)   PQS recover such other relief as the Court may deem appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff, in accordance with Federal Rules of Civil Procedure Rule 38(b), demands a jury trial as to all issues properly triable by a jury.

Respectfully submitted,

Dated:  October 22, 2010	By:   /s/  Paul C. Van Slyke
Paul C. Van Slyke
Attorney in Charge
State Bar No. 20457000
Southern District No. 531
Bruce J. Cannon
State Bar No. 24055258
Southern District No. 675598
LOCKE LORD BISSELL & LIDDELL LLP
600 Travis, Suite 2800
Houston, TX 77002-3095
Phone: (713) 226-1200
Facsimile: (713) 223-3717
pvanslyke@lockelord.com
bcannon@lockelord.com

ATTORNEYS FOR PLAINTIFF
PENNZOIL-QUAKER STATE COMPANY